UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

NATHANIEL MARCELIOUS ANTONIO
BOWERS,

                    Petitioner,                    Case No. 1:21-cv-768

v.                                                 Hon. Hala Y. Jarbou

GREGORY SKIPPER,

                    Respondent.
_____/

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Nathaniel Marcelious Antonio Bowers is incarcerated with the Michigan Department of Corrections at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. On November 28, 2018, Petitioner pleaded guilty in the Eaton County Circuit Court to second-degree murder, in violation of Mich. Comp. Laws § 750.317, and use of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b. On February 1, 2019, the court sentenced Petitioner to a prison term of 40 to 70 years for murder, to be served consecutively to a sentence of 2 years for felony-firearm.

On September 1, 2021, Petitioner filed his habeas corpus petition raising four grounds for relief, as follows:

I.      Petitioner's Fourteenth Amendment right to enter a knowing and voluntary plea was violated by the State of Michigan when he entered an involuntary plea of guilty, induced by fear, misapprehension, promises and ignorance in violation of *United States v. Brady*, 397 U.S. 742.

II.     Petitioner contend[s that] constitutional error resulted in an alteration of Petitioner['s] minimum sentence range[;] Petitioner was entitled to

resentencing because the state court incorrectly scored offense variables 6 [and] 9 resulting in a due process violation under an inaccurate sentencing guideline range.

III.   Petitioner['s] statement made for the purpose of creating [a] criminal responsibility report are privileged communications and shall not be provided to the court for any purpose other than on the issue of mental illness or insanity unless the Petitioner consents.

IV.   Michigan's legislature has determined that the proper approach to sentencing is to favor individualized sentencing for every defendant[.] Petitioner is entitled to resentencing because his minimum term was [an] unreasonable and disproportionate sentence and [an] unreasonable departure.

(Pet., ECF No. 1, PageID.6–10.) In Petitioner's response to Respondent's answer, Petitioner expressly conceded grounds III and IV. (Pet'r's Resp. Br., ECF No. 32, PageID.1104.) Accordingly, the Court need only address grounds I and II.

Even though Petitioner asks the Court to address only grounds I and II, his argument suggests that he is actually asking the Court to address ground I as initially presented and then also take into account "how the privileged communication between Bowers and his clinician were 'relevant circumstances' . . . as to whether Bowers' plea was voluntary." (Pet'r's Resp. Br., ECF No. 32, PageID.1102.) That statement would appear to merge some aspect of ground III into the Court's consideration of ground I. Moreover, because grounds II and IV relate to sentencing, there may be some overlap between those grounds as well. To ensure that the Court's analysis captures all of the issues Petitioner intends to raise, therefore, the Court will address all four habeas grounds.

Respondent has filed an answer to the petition (ECF No. 11) stating that the grounds should be denied because they are meritless or not cognizable on habeas review. The Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

**Discussion**

I.     **Factual Allegations**

On July 11, 2017, Petitioner shot and killed Trevon McDuffy.[1] Petitioner was sitting in his vehicle at a convenience store. McDuffy approached the vehicle. They exchanged words. Petitioner took a fully loaded nine-millimeter handgun and fired it three times at McDuffy, intending to kill him. McDuffy fled. Petitioner got out of his vehicle in pursuit. Intending to kill McDuffy, Petitioner fired six more shots as McDuffy fled. McDuffy fell to the ground. Petitioner came over to McDuffy and, intending to kill him, fired one more shot. McDuffy died as a result of the gunshot wounds.

That Petitioner fired the shots that killed McDuffy was never in dispute. But there were questions regarding whether Petitioner's mental health may have prevented him from being either criminally responsible for his actions or competent to stand trial. (Status Conf. Tr., ECF No. 12-3.) The report from the Center for Forensic Psychiatry indicated that Petitioner was competent to stand trial, and the trial court made that finding. (Competency Hr'g Tr., ECF No. 12-4, PageID.569; Dec. 20, 2017, Rep., ECF No. 12-10, PageID764–771.) There was some misunderstanding by Petitioner regarding whether his statements to the examining physician regarding the events of July 11, 2017, could be used against Petitioner. For that reason, Petitioner declined to answer questions relating to criminal responsibility. The misunderstanding was cleared up at the competency hearing and the criminal responsibility examination was rescheduled. (*Id.* at 570–571.)

---

[1] These facts are taken from Petitioner's admissions at the plea hearing. (Plea Tr., ECF No. 12-7, PageID.625–630.) Petitioner's admissions are consistent with the testimony of witnesses and police officers offered at Petitioner's preliminary examination. (Prelim. Exam. Tr., ECF No. 12-2.)

The criminal responsibility report was submitted in February of 2018. (Status Conf. Tr., ECF No. 12-5, PageID.582; Feb. 16, 2018, Rep., ECF No. 12-10, PageID.772–784.) The report indicated that Petitioner did not demonstrate an intellectual disability or a statutorily defined mental illness at the time of the offenses and, therefore, there would not be anything upon which a legal insanity defense could be founded. (Feb. 16, 2018, Rep., ECF No. 12-10, PageID.784.) Petitioner sought permission to obtain an independent report.

Petitioner's independent expert examined Petitioner during July of 2018 and issued his report during September of that year. (Sept. 12, 2018, Rep., ECF No. 12-10, PageID.755–763.)[2] That report concluded that Petitioner suffered from post-traumatic stress disorder (PTSD) because he had been shot previously. The author reported the following:

> [Petitioner] is suffering from a psychiatric illness that would interfere with his ability to appreciate the wrongfulness of his actions. He would consider that he is acting in self-defense when he perceives threat in the environment. Furthermore, his Posttraumatic Stress Disorder impairs his ability to conform his actions to that expected by the law given his lower threshold for perceiving threats, and his inclination to act on threats in order to protect himself.

> I would advise the Court that his Posttraumatic Stress Disorder would impair his ability to form intent to do harm, and his only intent would have been self-protection and self-preservation based on his prior traumatic experience of being shot. He would therefore not be criminally responsible.

(*Id.*, PageID.762.)

Despite the report from the independent expert, on November 28, 2018, shortly before the scheduled trial, Petitioner entered a guilty plea to second-degree murder and a felony-firearm violation. Petitioner entered the plea subject to a *Cobbs* agreement[3] that the minimum sentence for

---

[2] Dr. Gerald Schiener, the author of the report, issued a second report dated January 24, 2019, wherein he opined that a lengthy prison sentence would not benefit Petitioner or the community. (Jan. 24, 2019, Rep., ECF No. 12-10, PageID.752–754.)

[3] A "*Cobbs* agreement" is the result of a particular type of sentencing negotiation as described in *People v. Cobbs*, 505 N.W.2d 208 (Mich. 1993). In *Cobbs*, the Michigan Supreme Court approved

the murder conviction would fall in a range from 20 to 45 years (plus the mandatory 2-year consecutive sentence for felony-firearm). Petitioner acknowledged that no one had promised anything other than those terms to get him to plead guilty, that no one had threatened him to get him to plead guilty, and that he was pleading guilty freely, voluntarily, and understandingly. (Plea Tr., ECF No. 12-7, PageID.620–622.)

Petitioner contends that almost immediately after the plea he sent a letter to the trial court asking to withdraw his plea because he had entered it under fear and misapprehension. Petitioner claims that he felt coerced by the prospect of a life sentence based on the advice of his counsel. Similarly, Petitioner felt forced into entering his plea by family and friends who advised him that if he chose to forego the plea and was sentenced to life imprisonment he would no longer have his support system to help him mitigate the psychological effects of isolation. (Pet'r's Aff., ECF No. 28-2, PageID.1089.) Petitioner notes that he was just "saying yes . . . from all the pressure, coercion, threats, and promises . . . [he] had no clue what [he] was getting into when [he] plead guilty." (*Id.*, PageID.1090.) Petitioner claims further that he did not understand the nature of the constitutional protections he was waiving. (*Id.*) The Court did not permit Petitioner to withdraw his plea and, on February 1, 2019, the trial court sentenced Petitioner as described above. (Sentencing Tr., ECF No. 12-8.)

Petitioner's appellate counsel filed a new motion to withdraw plea that the trial court denied. (Mot. Hr'g Tr., ECF No. 12-9.) Petitioner then filed applications for leave to appeal in the Michigan Court of Appeals, and the Michigan Supreme Court, raising the same issues he raises in

---

the practice of judicial involvement in plea/sentence bargaining. *Id.* at 211. The court authorized state trial court judges to, at the request of a party, provide a preliminary evaluation of the sentence that the judge would impose. *Id.* at 211–12. The parties might then base a plea and sentencing agreement on that number. *Id.* If the court decides to exceed that number at sentencing, the court must permit the defendant to withdraw his or her plea. *Id.*

this Court. The court of appeals denied leave "for lack of merit in the grounds presented" by order issued October 28, 2019. (Mich. Ct. App. Order, ECF No. 12-10, PageID.714.) Thereafter, the supreme court denied leave by order issued September 8, 2020. (Mich. Order, ECF No. 12-11, PageID.988.) This petition followed.

## II.  Motion to Expand the Record

Petitioner has moved to expand the record under Rule 7 of the Rules Governing § 2254 Cases. He seeks to include a report from an independent expert psychologist regarding Petitioner's criminal responsibility for the events of July 11, 2017. (ECF No. 28-1.) That report, however, is already part of the state court record. (Sept. 12, 2018 Rep., ECF No. 12-10, PageID.755–763.) With regard to that report, Petitioner's motion is properly denied as unnecessary.

Petitioner also seeks to include an affidavit he prepared and signed in connection with his response brief. (ECF No. 28-2.) That affidavit was not part of the state court record; however, almost all, if not all, of its content was before the state courts by way of Petitioner's statements in court or his motions and briefs.

To the extent Petitioner invites the Court to go beyond the state court record to decide his habeas issues, his request is contrary to the legislative mandates of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002).

An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The state court of appeals adjudicated each of Petitioner's claims on the merits. (Mich. Ct. App. Order, ECF No. 12-10, PageID.714) ("[T]he delayed application for leave to appeal is DENIED for lack of merit in the grounds presented.").[4] This Court must give appropriate deference to the decisions of state courts on habeas review. For that reason, where the state court has adjudicated a claim on the merits, the federal court is limited to the state court record in deciding a petitioner's habeas challenges. The habeas statute expressly states that limitation for challenges under § 2254(d)(2), which are claims the state court's decision was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d) ("An application for a writ of habeas corpus . . . shall not be granted . . . unless the adjudication of the claim— . . . (2) resulted in a decision that was based on an unreasonable determination of the facts *in light of the evidence presented in the State court proceeding*." (emphasis added)). And the Supreme Court has held that review of challenges under § 2254(d)(1), regarding adjudications that "result[] in a decision that [is] contrary to, or an unreasonable application of, clearly established Federal law"—are also limited to the state court record. *Cullen v. Pinholster*, 563 U.S. 170, 182–183 (2011).

---

[4] *See infra* Part III.A.

Nonetheless, because the affidavit is attached to Petitioner's motion, it is now part of this Court's record. And because the trial court hearing transcripts and Petitioner's appellate court pleadings reflect the same factual statements that are collected in the affidavit, the Court will consider the content of the affidavit in resolving the issues raised in the petition. To that extent, Petitioner's motion to expand the record will be granted.

## III.   AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell*, 535 U.S. at 693–94. An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer*, 959 F.3d at 721 (internal quotation marks omitted) (quoting *Harrington*, 562 U.S. at 101)). This standard is "intentionally difficult to meet." *Woods*, 575 U.S. at 316 (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the

merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate

courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 180. "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### A.    Adjudicated on the Merits

Petitioner argues that his claims were not adjudicated on the merits such that the deferential limits of 28 U.S.C. § 2254(d) do not apply. (Pet'r's Resp. Br., ECF No. 32, PageID.1102) ("Bowers['] claim was never adjudicated on the merits for purposes of 2254(d), and this Court should review the claims de novo."). There is no question that the Michigan Court of Appeals adjudicated Petitioner's claims "on the merits." The court of appeals denied leave "for lack of merit in the grounds presented" by order issued October 28, 2019. (Mich. Ct. App. Order, ECF No. 12-10, PageID.714.) Nonetheless, Petitioner posits that, because the trial court referenced state

10

authority when rejecting Petitioner's claims, that the court of appeals likely did not resolve Petitioner's federal issues on federal grounds.

Petitioner's leap from the trial court's citation to state authority to the conclusion that the court of appeals ignored his federal claims is not convincing. The Sixth Circuit Court of Appeals has made clear that the burden is on Petitioner to overcome the strong presumption that the state court adjudicated Petitioner's federal claim on the merits:

> When a state court denies relief on a properly presented federal claim, we presume that the state court adjudicated that claim on the merits. *Harrington v. Richter*, 562 U.S. 86, 99, 131 S. Ct. 770, 178 L.Ed.2d 624 (2011). A petitioner may rebut this presumption only in "limited circumstances." *Johnson v. Williams*, 568 U.S. 289, 301, 133 S. Ct. 1088, 185 L.Ed.2d 105 (2013). One such circumstance is "[w]hen the evidence leads *very clearly* to the conclusion that a federal claim was inadvertently overlooked in state court." *Id.* at 303, 133 S. Ct. 1088 (emphasis added). For example, when a state court addressed all of the claims raised in a petitioner's original post-conviction motion but did not acknowledge *any* of the claims raised in his amended motion, we concluded that it "seem[ed] likely that the state court 'inadvertently overlooked' all of [the] claims in [the] amended motion." *Brown v. Romanowski*, 845 F.3d 703, 712 (6th Cir. 2017) (quoting *Johnson*, 568 U.S. at 303, 133 S. Ct. 1088). In those striking circumstances, we held that the presumption of merits adjudication had been rebutted and we reviewed the petitioner's claims de novo. *Id.*

> The Supreme Court has cautioned, however, that petitioners will rarely be able to overcome the presumption of merits adjudication. *See Johnson*, 568 U.S. at 304, 133 S. Ct. 1088. *Johnson* teaches that the presumption prevails even when the state court's opinion wholly omits discussion of the federal claim. *Id.* Indeed, a state-court decision providing no reasoning at all may still be entitled to AEDPA deference. *Richter*, 562 U.S. at 100, 131 S. Ct. 770; *see also Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L.Ed.2d 263 (2002) (noting that AEDPA "does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

> We have held that *Johnson*'s presumption prevails when a state court imperfectly discusses, rather than omits, a petitioner's federal claim. *See McKinney v. Hoffner*, 830 F.3d 363, 368–69 (6th Cir. 2016). In *McKinney*, the state court addressed an ultimate issue (whether the petitioner's two statements had unequivocally invoked his Sixth Amendment right to counsel) without explicitly addressing a critical threshold issue (whether a police officer's intervening statement amounted to "interrogation"). *See id.* at 368; *see also Smith v. Illinois*, 469 U.S. 91, 105 S. Ct. 490, 83 L.Ed.2d 488 (1984) (holding that a suspect's "responses to further interrogation [after unambiguously requesting counsel] may

not be used to cast retrospective doubt on the clarity of the initial request"). On habeas review, we noted that the state-court opinion had not overtly grappled with the "crux" of the petitioner's claim (the interrogation issue). *Id.* Nevertheless, applying *Johnson*, we presumed that because the state court had addressed the ultimate claim, it must have rejected the petitioner's threshold claim on the merits; accordingly, we granted AEDPA deference to the state court's adjudication of that issue. *Id.*

Courts in other circuits have applied *Johnson* in like fashion. They have applied AEDPA deference to state court decisions rejecting federal claims, despite the state court not: "show[ing] its work," *Lee v. Comm'r, Ala. Dep't of Corrs.*, 726 F.3d 1172, 1211 (11th Cir. 2013), addressing a "subsidiary argument," *Jenkins v. Bergeron*, 824 F.3d 148, 152 (1st Cir. 2016), or "describ[ing] [the] claim in precisely the manner [the petitioner] preferred," *Miller v. Thaler*, 714 F.3d 897, 901 n.3 (5th Cir. 2013).

*Smith v. Cook*, 956 F.3d 377, 386–87 (6th Cir. 2020).

The state court of appeals did not "show its work" here. But it was not required to "show its work" to earn the deference required by § 2254(d). The state court is presumed to have resolved the Petitioner's federal issues on the merits. It is Petitioner's obligation to demonstrate otherwise. Petitioner has not met that burden. Accordingly, the Court concludes that Petitioner's claims are properly considered under the deferential standard of § 2254(d). Nonetheless, the Court would reach the same conclusion regarding Petitioner's habeas grounds even on *de novo* review.

## B. Knowing and voluntary plea (habeas grounds I and III)

A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). On the other hand, "[i]t is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984).

The test for determining a guilty plea's validity is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).

Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and may consider such factors as whether there is evidence of factual guilt. While courts may consider whether a factual basis for a guilty plea exists in their assessments of its validity, it has generally been held that the Constitution does not require that they ensure such a basis exists. *See Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir. 1993) ("'Strong evidence of guilt' may suffice to sustain a conviction on an *Alford* plea, and may be essential under Rule 11 [of the Federal Rules of Criminal Procedure], but it is not necessary to comply with the Constitution." (quoting *Alford*, 400 U.S. at 37)); *see also Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000); *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995) (citing *Higgason*, 984 F2d at 208); *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983); *Thundershield v. Solem*, 565 F.2d 1018 (8th Cir. 1977); *Edwards v. Garrison*, 529 F.2d 1374, 1376 (4th Cir. 1975); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971).

In order to find a constitutionally valid guilty plea, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving.

*Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences." (internal quotation marks omitted) (citation omitted).

Finally, the defendant must have available the advice of competent counsel. *Tollett v. Henderson*, 411 U.S. 258, 267-68 (1973); *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel). Ineffective assistance of counsel will render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56–57.

Petitioner's arguments implicate three of the requirements. He suggests that he was coerced into pleading guilty by his family and his counsel. He contends that he did not understand the charges against him or the consequences of entering his plea. And, finally, Petitioner complains that his counsel rendered ineffective assistance when advising Petitioner with regard to the plea.

### 1.   Involuntary plea

Petitioner suggests that his plea was involuntary because he was coerced by "misapprehension and fear."[5] Petitioner identifies two distinct but related "fears:" the threat of life

---

[5] (Pet'r's Appeal Br., ECF No. 12-10, PageID.735) ("The plea in the present case was not knowingly, understandingly, and voluntarily taken in violation of MCR 6.302, and of federal and state constitutional law, because it was made under fear and misapprehension as Bowers felt intense pressure by his family and attorney."); (Pet'r's Resp. Br., ECF No. 32, PageID.1105) ("Bowers claims that his plea based conviction was not a valid waiver under the Due Process

imprisonment and the threat that he would lose his support system of family and friends. (Pet'r's Br., ECF No. 2, PageID.24; Pet'r's Aff., ECF No. 28-2, PageID.1089.)

Petitioner was charged with open murder. That charge provided notice to Petitioner that he might be convicted of first-degree murder, Mich. Comp. Laws § 750.316, or second-degree murder, Mich. Comp. Laws § 750.317. Conviction of first-degree murder would require the court to impose a life sentence without parole. Mich. Comp. Laws § 750.316(1). It was the responsibility of Petitioner's counsel and the court to inform Petitioner of the consequences of accepting or rejecting the plea agreement. As the Supreme Court has stated, "confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, [but] the imposition of these difficult choices [is] an inevitable'—and permissible—'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.'" *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 31 (1973)). Informing Petitioner of the prospect of a life sentence, therefore, "is not coercive[.]" *Williams v. United States*, 47 F. App'x 363, 370 (6th Cir. 2002).

Similarly, the detrimental impact that might follow from proceeding with trial and the isolating effect of a long—possibly lifelong—sentence is simply a natural consequence of Petitioner's criminal behavior. Even if Petitioner's counsel, the prosecutor, the court, or Petitioner's family and friends emphasized that Petitioner could avoid that detrimental impact by pleading guilty, that would not be coercive. "[I]nforming the Defendant of the positive and negative effect of pleading guilty is not coercive . . . ." *Id*.; *see also United States v. Green*, 388

---

Clause because it was not voluntary, intelligent, or knowingly [made] and it was induced by fear, misapprehension, promise, and ignorance.").

F.3d 918, 923 (6th Cir. 2004) ("[A]ccurate information regarding the possible ramifications of proceeding to trial cannot be construed as coercive").

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia*, 991 F.3d at 326). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see also Parke v. Raley*, 506 U.S. 20, 29 (1992) (holding that the factual findings of voluntariness made by the state court are entitled to a presumption of correctness); *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (a solemn plea of guilty presents a "formidable barrier" to a subsequent claim to the contrary).

The trial judge in Petitioner's case specifically asked Petitioner if there were promises or threats that caused him to enter his plea other than the terms of the agreement that were put on the record. Petitioner said there were not. (Plea Tr., ECF No. 12-7, PageID.190.) Petitioner's present assertion that that he was coerced by his fears does not overcome his sworn statement to the contrary in the plea transcript.

Accordingly, Petitioner has failed to show that the state appellate court's rejection of the claim that Petitioner's plea was coerced is contrary to, or an unreasonable application of, clearly established federal law.

### 2.      Charges and consequences

Petitioner's claim that he did not understand the charges, or the consequences of entering his plea, is premised on the report of his independent evaluation of competence and criminal responsibility. Petitioner's expert, Dr. Gerald Schiener, reported the following:

> [Petitioner] is suffering from a psychiatric illness that would interfere with his ability to appreciate the wrongfulness of his actions. He would consider that he is acting in self-defense when he perceives threat in the environment. Furthermore, his Posttraumatic Stress Disorder impairs his ability to conform his actions to that expected by the law given his lower threshold for perceiving threats, and his inclination to act on threats in order to protect himself.
>
> I would advise the Court that his Posttraumatic Stress Disorder would impair his ability to form intent to do harm, and his only intent would have been self-protection and self-preservation based on his prior traumatic experience of being shot. He would therefore not be criminally responsible.

(Sept. 12, 2018 Rep., ECF No. 12-10, PageID.762.) Petitioner suggests that if he had simply understood that Dr. Schiener's determinations at least "mitigated the crime to a less[e]r offense" he would not have entered a guilty plea. Petitioner grossly overstates the import of Dr. Schiener's report.

Dr. Schiener's findings might have impacted Petitioner's defenses in a couple of ways. They might have been used to support an insanity defense or they might have been used to support a claim of justification, specifically self-defense.

### a.      Insanity defense

Under Michigan law, sanity is not an element of substantive criminal charges, but insanity is an affirmative defense. *See* Mich. Comp. Laws § 768.21a. A criminal defendant bears the burden of proving the defense by a preponderance of the evidence. *Id*. The defendant must show that "as a result of mental illness . . . or as a result of having an intellectual disability . . . [he] lacks substantial capacity either to appreciate the nature and quality or the wrongfulness of his . . . conduct or to conform his . . . conduct to the requirements of the law." *Id*.

17

Petitioner could have proceeded to trial hoping that the jury might conclude that his expert's opinion tipped the scales in favor of the defense of insanity despite the report of the Center for Forensic Psychiatry's report to the contrary. That would have been a gamble; but if the two reports relied on the same evidence but reached different conclusions, Petitioner could have gone forward on the hope that his expert was more persuasive.

However, the two reports did not rely on the same evidence. Dr. Schiener's report depended entirely on the crime as Petitioner described it:

> A man . . . came up to the patient's car and stood in front of his car and said to him, "What's up bitch" and told the patient to "get out of the car". The patient declined. He states that he was waving his hands. The man kept saying "get out of the car" and then said, "I'm going to let you get out". The patient started his car. The driver's door was open. The man came up. He had his hand in his pocket. He came up close to the patient. The patient states, "I shot him."

(Sept. 12, 2018, Report, ECF No. 12-10, PageID.755–756.) Petitioner did not tell Dr. Schiener that the victim fled after the first shots were fired. He did not tell Dr. Schiener that Petitioner fired multiple additional shots at the victim as he fled. He did not tell Dr. Schiener that he stood over the victim after he fell and then fired a final shot. It is difficult to credit Dr. Schiener's conclusion that Petitioner did not appreciate the wrongfulness of his actions when the actions Dr. Schiener considered were a watered-down, incomplete version of the actions that had resulted in the open murder charge.

Moreover, no matter how incomplete Dr. Schiener's consideration of the circumstances might have been, his conclusion—that Petitioner was not criminally responsible—was available to Petitioner when he entered his plea. It is not as if Petitioner's counsel had failed to develop the defense or failed to inform Petitioner about it.[6] Petitioner entered his plea with full knowledge that

---

[6] To the extent Petitioner claims that counsel failed to take the defense into account when advising Petitioner to plead guilty, that issue is discussed below.

his expert had concluded Petitioner was not criminally responsible. To that extent, Petitioner was fully aware he was waiving a complete, though perhaps unpersuasive, defense when he entered his plea. His claim that he did not understand the consequences of his plea, therefore, is not supported by the record.

### b.      Self-defense

Petitioner, in opining that Dr. Schiener's determinations mitigated his crime from murder to manslaughter, appears to be arguing that he could successfully assert the doctrine of "imperfect self-defense." In Michigan, there is a common law defense of self-defense and a statutory defense of self-defense. *See* Mich. Comp. Laws §§ 780.972, 790.974. Under the statute, "[a]n individual . . . may use deadly force against another individual . . . if . . . [t]he individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or great bodily harm to himself . . . or to another individual." Mich. Comp. Laws § 780.972. The Michigan Supreme Court has concluded that the statutory defense of self-defense represents an expansion of the common law defense with regard to "the circumstances in which a person may use deadly force in self-defense or in defense of another person without having a duty to retreat." *People v. Leffew*, 975 N.W.2d 896, 906 (Mich. 2022) (quoting *People v. Dupree*, 788 N.W.2d 399, 407 (Mich. 2010)). "[A]side from [it's impact on] one's duty to retreat, the statute did not modify or abrogate the common-law defenses of self-defense or defense of others." *Id.*

The Michigan Supreme Court explained the common law defense of self-defense as follows:

> As a general rule, the killing of another person in self-defense by one who is free from fault is justifiable homicide if, under all the circumstances, he honestly and reasonably believes that he is in imminent danger of death or great bodily harm and that it is necessary for him to exercise deadly force. The necessity element of self-defense normally requires that the actor try to avoid the use of deadly force if he can safely and reasonably do so, for example by applying nondeadly force or by utilizing an obvious and safe avenue of retreat.

19

*People v. Riddle*, 649 N.W.2d 30, 34 (Mich. 2002) (footnotes omitted). Although the statute might permit a self-defender to forego retreat in more circumstances than the common law, the statute does not otherwise modify the common law defense. Therefore, a self-defender must still "try to avoid the use of deadly force if he can safely and reasonably do so." *Id*.

Moreover, the belief of imminent danger of death must not only be honest, it must be reasonable as well. The test is objective. *People v. Campbell*, No. 255256, 2005 WL 1189669, at *2 (Mich. Ct. App. May 19, 2005) ("The reasonableness of the belief is determined by an objective standard."); *People v. Bynum*, 852 N.W.2d 570, 586 n. 9 (Mich. 2014) (partial concurrence of Justice Young) ("[T]he majority fails to fully account for the distinction between defendant's subjective belief in the need to employ deadly force and the objective reasonableness of that belief."). Thus, Petitioner's belief regarding the danger he faced—a belief that was influenced by a perception of danger that was twisted by post-traumatic stress disorder—may have been honest, but it likely would not have been shared by the "reasonable man." *See, e.g., People v. Etchie*, No. 301497, 2012 WL 556194, at *1 (Mich. Ct. App. Feb. 21, 2012) ("'[P]sychological idiosyncrasies may, at least in theory, be relevant to the reasonableness of a defendant's belief that he was in danger.' However, the defendant's belief must still be reasonable under the circumstances and not the product of a mental disorder."); *People v. Sullivan*, 586 N.W.2d 578, 583 (Mich. Ct. App. 1998), *aff'd*, 609 N.W.2d 193 (Mich. 2000) (considering the similar issue of reasonable provocation, the court stated, "by definition, any special traits of the particular defendant cannot be considered. The fact that defendant may have had some mental disturbance is not relevant to the question of provocation" (footnote omitted)).

Petitioner's claim that his actions were justified by self-defense is, therefore, imperfect; but that does not necessarily mean he is entitled to the benefit, if any, of the imperfect self-defense

doctrine. The doctrine operates to mitigate a murder charge to voluntary manslaughter. The Michigan Supreme Court tracked the doctrine's appearance in Michigan to a footnote in *People v. Morin*, 187 N.W.2d 434, 438 n.7 (Mich. Ct. App. 1971). *People v. Reese*, 815 N.W.2d 85, 96–97 (explaining that court of appeals judge Levin, in obiter dictum, stated "the crime may be manslaughter, not murder, when the actor kills in self-defense but was not entitled to do so under the circumstances, either because he was not free from fault or his belief that he was in danger was not justified"). The *Reese* court, however, rejected the notion that Michigan recognized the doctrine "as a freestanding defense that mitigates a murder to manslaughter." *Id*. at 99. The court acknowledged that there may be circumstances that fall within the boundaries of "imperfect self-defense" as recognized in other jurisdictions that would also undercut the determination of malice or intention that is necessary to a conviction for murder. But that mitigation, the *Reese* court concluded, is determinable from the definitions of murder and manslaughter, not as an add-on "imperfect" defense.

Considered against the backdrop of *Reese*, Petitioner's arguments regarding mitigation are not supported by Michigan law. The justification that would foreclose criminal responsibility here requires that the belief Petitioner was in imminent danger of death was reasonable; but there is nothing in Dr. Schiener's report to suggest that it was. The mitigation he seeks would be appropriate if his fusillade were prompted by reasonable provocation; but there is nothing in Dr. Schiener's report to suggest that it was.

Because Petitioner cannot show that Dr. Schiener's report supports a justification defense or a mitigation defense, it is not at all clear how the report would have changed his approach, the court's approach, or counsel's approach regarding the plea. He has certainly failed to demonstrate

how the report made his plea unknowing or how the report impacts his understanding of the consequences of his plea.

### 3.      Ineffective assistance of counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."

22

*Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (citing *Harrington*, 562 U.S. at 102) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . ").[7]

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill*, 474 U.S. at 58. Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Not every ineffective assistance of counsel claim survives a guilty plea. Claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are foreclosed by that plea. *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett*, 411 U.S. at 267. The United States Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

---

[7] The Michigan Court of Appeals issued only a summary affirmance, denying the appeal for lack of merit in the grounds presented. That affirmance, however, is deemed a decision on the merits of the claims presented that is entitled to AEDPA deference. *See Harrington*, 562 U.S. at 99; *see also Johnson*, 568 U.S. at 298; *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference).

*Tollett*, 411 U.S. at 267. Consequently, a knowing and voluntary guilty plea waives all nonjurisdictional defects in the proceedings, including a claim of ineffective assistance of counsel that does not relate to the voluntariness of the plea. *See United States v. Stiger*, 20 F. App'x 307, 308–09 (6th Cir. 2001).

Petitioner's arguments suggest that counsel rendered ineffective assistance that impacted Petitioner's decision to enter a plea in two ways: counsel focused on the potential life sentence that would follow a conviction for first-degree murder so that Petitioner was coerced into the plea; and counsel failed to appropriately explain or exploit Dr. Schiener's report. For all of the reasons stated above, however, neither counsel's performance with regard to the potential life sentence nor counsel's treatment of Dr. Schiener's report were professionally unreasonable. Accordingly, Petitioner has failed to show that the state court's rejection of his ineffective assistance claims was contrary to, or an unreasonable application of, clearly established federal law. Accordingly, he is not entitled to habeas relief.

### C.    Dr. Schiener's report as a privileged document

Petitioner also objects that the trial court improperly considered Dr. Schiener's report when sentencing Petitioner. The document is specifically referenced in the pre-sentence investigation report (PSIR). The presentence investigation report notes that Dr. Schiener reported that Petitioner suffered from post-traumatic stress disorder that impacted Petitioner's perception of threats in the environment and impaired his ability to conform his actions to expectation.

At the sentencing hearing, there was a confusing exchange regarding the PSIR author's comments about Petitioner's mental health. (Sentencing Hr'g Tr., ECF No. 12-8, PageID.650–658.) The prosecutor objected because the PSIR author wrote that the PTSD diagnosis came from the competency or criminal responsibility report from the Forensic Center. That was objectionable to the prosecutor because the Forensic Center did not diagnose Petitioner with any condition.

24

Petitioner's counsel did not object to the PSIR author's report regarding Petitioner's PTSD diagnosis, but he did object to any reference to the Forensic Center's reports appearing in the PSIR or being considered at sentencing. The trial court ultimately resolved the issue to the satisfaction of all parties by leaving the PSIR author's reference to the PTSD diagnosis, but striking the notation that the PSIR author took the PTSD information from the Forensic Center's report.

After the court struck from the PSIR any indication that the PTSD diagnosis came from the Forensic Center report, Petitioner's counsel attacked the prosecution's use of the Forensic Center's report in the prosecution's sentencing memorandum as well as the attachment of the report to the memorandum *and* the use of Dr. Schiener's report. (*Id.*, PageID.658–663.) Counsel argued that those documents were protected from use by the court for any purpose under state statute. Counsel claimed that statutory protection was the reason he had Dr. Schiener prepare a separate report just for sentencing. Ultimately, the trial court ruled in favor of the prosecutor. (*Id.*, PageID.670.) The court of appeals then rejected Petitioner's presentation of the issue on appeal because it lacked merit.

To the extent Petitioner claims that the state court decided the statutory privilege issue wrongly under state law, that claim is beyond the proper scope of habeas review. The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction . . . [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67–68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68.

The trial court's determination that the reports were properly considered at sentencing under state law conclusively resolves the issue. As the Supreme Court explained in *Estelle*, "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." 502 U.S. at 67–68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). The court of appeals' determination that the reports were properly considered at sentencing under state law, therefore, is axiomatically correct.

It is possible that an evidentiary ruling—even a ruling that is axiomatically correct under state law—still violates due process. State-court evidentiary rulings can rise to the level of due process violations if they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation marks omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

This Court may not grant relief simply because it might have decided the evidentiary question differently. The Court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).

Petitioner cannot prevail under that standard. In *Sanborn v. Parker*, 629 F.3d 554 (6th Cir. 2010), the Sixth Circuit considered whether testimonial privileges—in that case, the attorney-client privilege and the priest-penitent privilege—were protected by the Due Process Clause. The court concluded that they were not, and that the Supreme Court had never said differently. *Sanborn*, 629 F.3d at 575–76. Thus, to the extent Petitioner intends to raise a stand-alone claim regarding consideration of the statutorily protected reports, it is not cognizable on habeas review.

### D. Scoring of Petitioner's sentencing guidelines (habeas grounds II and IV)

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Note to Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76 (2005); *Estelle*, 502 U.S. at 67–68; *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Claims concerning the improper application of, or departures from, sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (discussing that federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief). Moreover, the Michigan Court of Appeals, in rejecting Petitioner's guidelines scoring challenge as meritless, has conclusively resolved that the guidelines were properly scored under state law.

Even if the guidelines were properly scored, however, the sentence might still be constitutionally inform for another reason. Petitioner alternatively suggests that his sentence is

unconstitutional because it is disproportionate, unreasonable, and not individualized. Proportional, reasonable, and individualized sentences, however, are not generally required by the Constitution.

Petitioner cites *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990), *People v. Steanhouse*, 902 N.W.2d 327 (Mich. 2017), and *People v. Sabin (On Second Remand)*, 620 N.W.2d 19 (Mich. 2000), respectively, in support of his claims that his sentence should be proportionate, reasonable, and individualized. (Pet'r's Appeal Br., ECF No. 2-1, PageID.63–67.)

In *Milbourn*, the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9–11; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003). Nearly three decades later, in *Steanhouse*, the Michigan Supreme Court held that a sentencing court's departure from the sentencing guidelines is unreasonable if the court abused its discretion. *Steanhouse*, 902 N.W.2d at 335. The proper test for determining whether the sentencing court abused its discretion, it held, is found in *Milbourn*'s proportionality analysis. *Id.* at 335–37. In other words, a sentence departing from the guidelines is unreasonable if it is disproportionate.

It is plain that *Milbourn*, and thus *Steanhouse*, were decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995) ("[Petitioner] argues that the trial court improperly exceeded the state sentencing guidelines and violated the principles of proportionality set forth in [*Milbourn*,] essentially asking the court to rule on a matter of state law which rarely serves as a basis for habeas corpus relief."); *Clarmont v. Chapman*, No. 20-1205, 2020 WL 5126476, at *1 (6th Cir. Jul. 13, 2020) ("[A]ny state law challenge to the reasonableness of [petitioner's] sentence or argument that his sentence is

28

disproportionate under state law is also not cognizable on habeas review."); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994) ("Petitioner's claim that his sentence violates the proportionality principle of *People v. Milbourn* does not state a claim cognizable in federal habeas corpus."). Because this Court has no power to intervene on the basis of a perceived error of state law, *see Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41, Petitioner's claims based on *Milbourn* and *Steanhouse* are not cognizable in a habeas corpus action.

The same reasonableness/proportionality principles are not present in the United States Constitution's Eighth Amendment. That is so despite the fact that the *Milbourn* opinion quotes *Weems v. United States*, 217 U.S. 349, 367 (1910): "It is a 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" *Milbourn*, 461 N.W.2d at 9. But the quote from *Weems* is somewhat misleading. *Weems* was not an Eighth Amendment case.

At issue in *Weems* was not a sentence imposed by a state, or even the United States, but one imposed by the supreme court of the Philippines. Mr. Weems' crime was making two false entries in a "wages paid" logbook relating to lighthouse services. His punishment for that crime was significant:

> The minimum term of imprisonment is twelve years, and that, therefore, must be imposed for 'perverting the truth' in a single item of a public record, though there be no one injured, though there be no fraud or purpose of it, no gain or desire of it. Twenty years is the maximum imprisonment, and that only can be imposed for the perversion of truth in every item of an officer's accounts, whatever be the time covered and whatever fraud it conceals or tends to conceal. Between these two possible sentences, which seem to have no adaptable relation, or rather in the difference of eight years for the lowest possible offense and the highest possible, the courts below selected three years to add to the minimum of twelve years and a day for the falsification of two items of expenditure, amounting to the sums of 408 and 204 pesos. And the fine and 'accessories' must be brought into view. The fine was four thousand pesetas,—an excess also over the minimum. The 'accessories' we have already defined. We can now give graphic description of Weems's sentence and of the law under which it was imposed. Let us confine it to the minimum degree of the law, for it is with the law that we are most concerned. Its minimum degree is confinement in a penal institution for twelve years and one day,

a chain at the ankle and wrist of the offender, hard and painful labor, no assistance from friend or relative, no marital authority or parental rights or rights of property, no participation even in the family council. These parts of his penalty endure for the term of imprisonment. From other parts there is no intermission. His prison bars and chains are removed, it is true, after twelve years, but he goes from them to a perpetual limitation of his liberty. He is forever kept under the shadow of his crime, forever kept within voice and view of the criminal magistrate, not being able to change his domicil without giving notice to the 'authority immediately in charge of his surveillance,' and without permission in writing. He may not seek, even in other scenes and among other people, to retrieve his fall from rectitude. Even that hope is taken from him, and he is subject to tormenting regulations that, if not so tangible as iron bars and stone walls, oppress as much by their continuity, and deprive of essential liberty. No circumstance of degradation is omitted. It may be that even the cruelty of pain is not omitted. He must bear a chain night and day. He is condemned to painful as well as hard labor. What painful labor may mean we have no exact measure. It must be something more than hard labor. It may be hard labor pressed to the point of pain.

*Weems*, 217 U.S. at 365–66.

The measure of that punishment was not the United States Constitution. In *Weems*, the United States Supreme Court was interpreting the "cruel and unusual" punishment clause of the Bill of Rights of the Philippine islands. Moreover, the "precept of justice" referenced was not one adopted by the United States Supreme Court or by any court of the islands; it was a belief attributed to persons "who have formed their conception of the relation of a state to even its offending citizens from the practice of the American commonwealths . . . ." *Weems*, 217 U.S. at 367.

The United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (discussing that the gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (finding that the principle applies only in "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality" (quoting *Rummel v. Estelle*, 445 U.S.

263, 285 (1980))). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).

Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law. His sentence does not present the extraordinary case that warrants deeper inquiry into reasonableness and proportionality or that runs afoul of the Eighth Amendment's ban of cruel and unusual punishment.

Petitioner also makes passing reference to the fact that his sentence was not "individualized." (Pet'r's Mich. Ct. App. Appl. for Leave to Appeal, ECF No. 1-1, PageID.47–49.) The concept of an "individualized" sentence has been discussed by the United States Supreme Court, but as a "prevalent modern philosophy of penology," not a constitutional mandate. *Williams v. New York*, 337 U.S. 241, 247 (1949). Even Michigan Supreme Court authority discusses individualized sentencing as a principle of the modern view of sentencing, not a constitutional requirement. *See, e.g.*, *People v. Triplett*, 287 N.W.2d 165, 166–67 (Mich. 1980); *see also People v. McFarlin*, 208 N.W.2d 504, 513 (Mich. 1973) ("The modern view of sentencing is that the sentence should be tailored to the particular circumstances of the case and the offender in an effort to balance both society's need for protection and its interest in maximizing the offender's rehabilitative potential.").

Federal authority likewise concludes, with two possible exceptions not applicable here,[8] that individualized sentences are not constitutionally required. *Harmelin*, 501 U.S. at 995 ("Our cases creating and clarifying the 'individualized capital sentencing doctrine' have repeatedly suggested that there is no comparable requirement outside the capital context, because of the qualitative difference between death and all other penalties."); *see also Lockett v. Ohio*, 438 U.S. 586, 604–05 (1978) (in a case holding that mitigating factors must be fully considered in death penalty cases, the Court "recognize[d] that, in noncapital cases, the established practice of individualized sentences rests not on constitutional commands, but on public policy enacted into statutes"). The Sixth Circuit has acknowledged that "there is no constitutional right to individualized sentencing in non-capital cases." *United States v. Odeneal*, 517 F.3d 406, 415 (6th Cir. 2008); *see also United States v. Graham*, 622 F.3d 445, 454 (6th Cir. 2010); *Thomas*, 49 F.3d at 261; *United States v. Gardner*, 931 F.2d 1097, 1099 (6th Cir. 1991); *United States v. Ruffin*, 783 F. App'x 478, 483 (6th Cir. 2019); *Hynes v. Birkett*, 526 F. App'x 515, 522 (6th Cir. 2013); *United States v. Holmes*, 11 F. App'x 408, 409 (6th Cir. 2001); *United States v. Levy*, 904 F.2d 1026, 1035 (6th Cir. 1990). *But see United States v. Corum*, 354 F. App'x 957, 963 (6th Cir. 2009) ("The government and Defendant both raise arguments about whether there is a constitutional right to an individualized sentence for non-capital defendants. It is not fully settled whether there is such a constitutional right, though some precedent in this Circuit may have suggested otherwise."). Therefore, any claim that Petitioner was denied an individualized sentence is not cognizable on habeas review.

---

[8] The two possible exceptions are a sentence of death, and a sentence of life imprisonment without possibility of parole for a juvenile offender—which is like "the death penalty itself." *Miller v. Alabama*, 567 U.S. 460, 470 (2012).

Petitioner has failed to show that the court of appeals' rejection of the claims that his sentence is disproportionate, unreasonable, and not individualized, is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, he is not entitled to habeas relief on those claims.

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in

33

violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability and denying in part and granting in part Petitioner's motion to expand the record.[9]

Dated: September 21, 2022                           /s/ Hala Y. Jarbou
                                                       HALA Y. JARBOU
                                                       CHIEF UNITED STATES DISTRICT JUDGE

---

[9] The motion is denied as unnecessary with regard to Dr. Schiener's report, which is already part of the state court record, and granted with regard to Petitioner's affidavit.